In the Matter of the Dependency of Terry John Bartha, a Minor.

Phyllis Bartha, Respondent-Appellant, v. William V. Hopf, State's Attorney of DuPage County, Illinois, Petitioner-Appellee.

Gen. No. 68–142.

Second District.

March 17, 1969.

Seymour Velk and Robert K. Downs, of Chicago (Ellis B. Rosenzweig and Sidney Z. Karasik, of counsel), for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Helen C. Kinney, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This appeal brings before us for the second time, the action commenced as a dependency proceeding brought by the State's Attorney of DuPage County with respect to Terry John Bartha. An order was entered declaring the child dependent and transferring custody from the child's natural mother to the child's maternal aunt and her husband. On appeal from that order, this Court reversed and remanded the cause for further proceedings consistent with the Court's opinion as reported in 87 Ill App2d 263, 230 NE2d 886.

On remand, the trial judge first refused a motion for a change of venue, and then without hearing any additional evidence, entered an order making certain findings of fact but otherwise followed the original order.

This appeal by Phyllis Bartha, the mother of the minor and respondent below, urges that the trial judge's order is against the manifest weight of the evidence and unsupported by the testimony, that the trial court failed to comply with the mandate of this Court by conducting new hearings, and that the trial court erred in not granting a change of venue.

In reversing and remanding the cause from the previous appeal, we noted that in the order adjudicating the dependency of the minor there was no finding that the mother was unfit or unable or unwilling to care for, protect, train, educate or discipline the child, or that it was in the interests of the child to be taken from the custody of the mother. We further noted that in the absence of such findings that we should not be called upon to review the entire record and make the initial findings of fact, and could not consider whether or not the adjudication of dependency was against the manifest weight of the evidence in the absence of findings which we considered mandatory and jurisdictional. See In re De-

pendency of Bartha, 87 Ill App2d 263 (supra), pages 267, 268, 230 NE2d 886.

The respondent argues that since the testimony in the original dependency cause concerned events in 1964, 1965 and 1966, they were not entirely timely as to the conditions at the time of the remand, and the cause should have been considered as a new matter on remand. Respondent urges that while the mandate issued in the previous opinion contained no specific directions to the trial court, that a new hearing was in the spirit of the mandate. The respondent calls attention to the comment in the prior opinion:

> "There was either conflicting or incomplete evidence on appellant's health, on the child's health, on the appellant's alleged promiscuity, on the appellant's history of financially supporting the child, on the frequency of appellant's visits to the child, and so forth." In re Dependency of Bartha, supra, at page 268.

The trial judge construed this Court's mandate as requiring that he, personally, make the findings of fact on the whole record, and, therefore, denied the motion for the change of venue. We do not consider that this was error. While a decree respecting the custody of the child is exceptional in its character and is always regarded as temporary (see People ex rel. Bukovich v. Bukovich, 39 Ill2d 76, 81, 233 NE2d 382 (1968)), the trial judge, after refusing the motion for a change of venue, offered the respondent the opportunity to present additional proof. Respondent took the position that it was the duty of the State to go forward, and while the State offered to present testimony as to the current status of the child and his progress in school, the Court indicated he did not wish to hear the offered testimony as he felt it had no bearing on the case. While we do not agree with that conclusion as a matter of law, we cannot con-

clude that the proceedings at this stage were "new," requiring the motion for change of venue to be granted.

We consider then whether or not the findings of the trial judge were against the manifest weight of the evidence.

The order now appealed from made specific findings of fact.[1] Considering the whole record, we conclude that

[1] "1. That TERRY JOHN BARTHA is a minor under the age of eighteen years, to wit: being nine years of age, having been born on October 30, 1959; 2. That at the time of the filing of the petition and the amended petition in this cause and for a considerable period of time previous thereto that TERRY JOHN BARTHA had been and was being cared for by ELMER FESSLER and BETTY FESSLER, his wife; 3. That TERRY JOHN BARTHA was and is the son of the respondent, PHYLLIS BARTHA, who testified that he was born to her out of wedlock; 4. That from the evidence adduced the Court further finds that the child, TERRY JOHN BARTHA, was very insecure as demonstrated by his poor sleeping habits and constant bedwetting; 5. That from the evidence adduced the Court further finds that the alleged promiscuity of PHYLLIS BARTHA had a bearing on the care and treatment which she afforded the child during the time that said child was in her custody; 6. That from the evidence adduced the Court further finds that during the period that TERRY JOHN BARTHA was not in the custody of PHYLLIS BARTHA that PHYLLIS BARTHA gave very little, if any support, toward the maintenance of said TERRY JOHN BARTHA; 7. That from the evidence adduced the Court further finds that PHYLLIS BARTHA by her previous abandonment of TERRY JOHN BARTHA over a period of years; by her failure to provide a good moral example and training; by her maintenance of a residence with a man not her husband; by her failure to provide for said child's needs, as exemplified by her failure to provide a proper diet and adequate clothing, has demonstrated her inability to be entrusted with the care and maintenance of said child; 8. That from the evidence adduced the Court further finds that an appraisal of the factual situation discloses that each fact, if viewed alone, perhaps would not sustain a finding of dependency, but when all of these facts are viewed collectively the Court finds that TERRY JOHN BARTHA is a dependent child and should be placed in the care and custody of ELMER FESSLER and BETTY FESSLER, his wife."

the specific findings of the trial judge, material to the question of dependency, are not properly supported by the evidence.

■ The finding that the child was "very insecure as demonstrated by his poor sleeping habits and constant bedwetting," is not based upon any evidence we have been able to find in the record. Petitioner suggests that it may have been found in a report of a Dr. Sanchez who examined the child and to whose examination the Court referred after the close of the evidence, but there is no inclusion of the report in the record, nor any evidence as to what Dr. Sanchez found. The Court could not properly consider matters heard out of Court and not preserved for review. Cohn v. Scott, 231 Ill 556, 559, 83 NE 191 (1907); In re Dependency of Rosmis, 26 Ill App2d 226, 231, 167 NE2d 826 (1960). In any event, there is no evidence in the record as to this condition found by the Court or as to who was responsible for the condition or who was in the best position to rectify the condition.

In the order, the trial judge found Phyllis Bartha guilty of promiscuity and that this affected the care and treatment she afforded Terry. The Court also found that the mother had demonstrated her inability to be entrusted with the care and maintenance of the child by failure to provide good moral example and training and by her maintenance of a residence with a man not her husband. The record in support of petitioner's burden of proof on this issue was the testimony of Betty Fessler who was seeking custody, and who claimed that on only one occasion when she came to Phyllis's apartment in 1964 she saw a man in his "underwear." She described the apartment as being "in a mess" and Terry in dirty clothes. Mrs. Fessler also testified that this man was with Phyllis Bartha at a "pool party" at her home in July of 1964. Terry testified that "Carl" was at the

apartment at times, that he just visited, but sometimes stayed overnight.

Testimony offered by respondents included a Cook County Public Aid caseworker who made unexpected visits to Mrs. Bartha's apartment and testified that she always found the place to be neat and immaculate. The incident described by Betty Fessler was denied by Phyllis Bartha. Rodney Bartha, the teen-age son of Phyllis, also denied that anyone had ever lived with him and his mother. The mother of both Phyllis Bartha and Mrs. Fessler, Helen Mann, testified that although she had not been to the present apartment, she previously had observed Phyllis taking care of both Rodney and Terry, both in her own home and in Phyllis's home, and that both Rodney and Terry were clothed, fed, disciplined properly, and taught the difference between right and wrong. She said that Phyllis very much exhibited the normal concern of a proper parent toward the children and conducted herself as a moral and Christian person, attending church regularly. She testified that the past living quarters of Phyllis were always clean and neat and "very nice."

A sister of Phyllis and Mrs. Fessler, Mrs. Mary Roberts, testified substantially to the same effect as the mother, and concluded, as did the mother, that Phyllis was a fit and proper parent for Terry, and that she would entrust her own children to Mrs. Bartha's care. Her husband, George Roberts, corroborated the mother's testimony also.

On this state of the record we hold that the trial judge's findings of promiscuity and its effect on the child are against the manifest weight of the evidence.

In another paragraph of the order, the trial court found that Mrs. Bartha gave Betty Fessler little, if any, support towards the maintenance of Terry. While Betty Fessler in her direct testimony stated that she did not

219

receive any payments from Mrs. Bartha, she admitted on cross-examination that she did receive certain money orders. Phyllis Bartha testified that she paid $25 per week regularly until she became ill, as evidenced by check stubs. Her mother, Helen Mann, confirmed the payments. There was testimony that Phyllis had offered to move in with the Fesslers and help around the house, and that she did on occasion work at the Fessler home on weekends to enable Mrs. Fessler to go out.

We hold that the finding of failure to support is against the manifest weight of the evidence.

■■ In the final finding paragraph of the order, the Court made a series of findings: That Phyllis Bartha had abandoned Terry over a period of years; had failed to provide good moral example and training; maintained a residence with a man not her husband; failed to provide for the child's needs by failing to provide a proper diet and adequate clothing, and for these reasons had demonstrated her inability to be entrusted with the care and maintenance of the child. The finding of abandonment is against the manifest weight of the evidence in the record. This finding is based solely on the uncorroborated testimony of Betty Fessler who claimed Phyllis never visited Terry, which Phyllis contradicted. It is manifest from the record that Mrs. Bartha, although she relied substantially on the help of others, particularly the Fesslers, to care for Terry over a period of time, did not "abandon" Terry in any legal sense. Abandonment requires "conduct which evinces a settled purpose to forego all parental duties and relinquish all parental claims to a child." Huber v. Huber, 26 Ill App2d 207, 211, 167 NE2d 431 (1960); In re Petition of Miller, 15 Ill App 2d 333, 338, 146 NE2d 226 (1957). We view the evidence as displaying Terry Bartha's life history as one of unfortunate continued conflict over his possession between parties whom we believe essentially have the well being

of Terry in mind, but the history does not add up to legal abandonment. The remaining findings in this paragraph have been treated elsewhere, but the record does not support the findings singly or in total.

Petitioner argues that parental unfitness is not the only criteria for depriving the mother of custody, if the order is in the best interests of the child, citing Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 158 NE2d 613 (1959). The facts in Giacopelli are far different from the facts shown on this record. We are painfully aware, that partly because of Mrs. Bartha's unfortunate circumstances in Terry's earliest years and partly because of the tortuous path this litigation has taken since the filing of the petition in 1965, that Terry has spent a large portion of his nine years with his aunt and her husband. And it is apparent that the child was not aware at the time of the hearing that Mrs. Bartha was his natural mother. It is also apparent that Mrs. Bartha is a poor woman, and that the Fesslers can provide more prosperous surroundings and physical advantages to Terry. But, while we may feel a sense of failure in the court system for not providing a more expeditious method of settling the custody of children, we cannot deny the natural mother her right to have custody of her child, on a record which does not support the trial court's finding of parental unfitness and dependency.

We, therefore, reverse.

Reversed.

MORAN, P. J. and DAVIS, J., concur.