*In re* PAMELA WESTLAND *et al.*, Minors.—(CARL KOERNER, Petitioner-Appellee, *v.* MARY WESTLAND, Respondent-Appellant.)

Fourth District    No. 13735

Opinion filed December 30, 1976.—Modified opinion filed on rehearing May 16, 1977.

James K. Borbely, of Land of Lincoln Legal Assistance Foundation, Inc., of Danville, for appellant.

Richard J. Doyle, State's Attorney, and Steven M. Helm, guardian ad litem, of Dukes, O'Rourke, Stewart, & Martin, Ltd., both of Danville (James E. McMahon, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

We must reverse, remand.

The mother of the five minors involved herein, Mary Westland, is the respondent. She appeals from orders of the trial court adjudging her five minor children to be dependent as defined by section 2—5 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—5), adjudging them wards of the court, committing them to the custody and guardianship of the Department of Children and Family Services and authorizing the guardianship administrator of that agency to consent to their adoption.

Mrs. Westland raises the following questions in this court: (1) Did the trial court err in allowing her psychiatrist to testify over the objection that the relationship was privileged? (2) Was there sufficient evidence to support the finding of dependency? and (3) Were Mrs. Westland's parental rights properly terminated? The petitioner has cross-appealed and argues that the court erred in limiting testimony by Myrna Barney and Mary Pope on the ground that their testimony was prohibited by the social worker privilege.

The facts are neither complicated nor lengthy. Petitions were filed alleging that Mary Westland's five minor children were neglected and dependent. At the hearing on the petitions, testimony was given by Mary, her psychiatrist, a psychiatric nurse and the natural father of one of the children. Dr. Robert Talbert, Mary's treating psychiatrist, testified that he had treated her while she was hospitalized in the psychiatric ward of St. Elizabeth's Hospital in 1972 and 1973, and again in September and October, 1975. He diagnosed her as an "undifferentiated schizophrenic" who, as of November 1975, was unable to care for herself and was prescribed large daily doses of Thorazine. In fact, he did not expect Mary ever to completely recover. All of Dr. Talbert's testimony was given over the objection that it was subject to the patient-psychiatrist privilege.

Myrna Barney, who had been a nurse on the psychiatric ward, testified to Mary's conduct during several of the hospitalizations. The trial court prohibited testimony concerning contact with Mrs. Westland while Mrs. Barney was a sustaining care worker with the Mental Health Department upon the ground that such testimony was protected by the statutory social worker's privilege. (Ill. Rev. Stat. 1975, ch. 23, par. 5320.) For the same

reason the court prohibited testimony by Mary Pope, a home care worker employed by the Department of Children and Family Services.

Mrs. Westland testified that, at the time of the hearing, she had been released from the hospital and was residing in a shelter care home. It is apparent from the record that she had some difficulty in recalling the names of the fathers of the children, and the birthdates of some of the children. She testified to her desire to provide a home for all her children and her concern for them.

Because of our resolution of the issues we need not present the testimony in any further detail.

## I

The first issue is whether the trial court erroneously permitted the psychiatrist, Dr. Talbert, to testify. This contention is based on the statutory psychiatrist-patient privilege which states:

> "In civil and criminal cases, in proceedings preliminary thereto, and in legislative and administrative proceedings, a patient or his authorized representative and a psychiatrist or his authorized representative have the privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental condition between patient and psychiatrist * * *." Ill. Rev. Stat. 1975, ch. 51, par. 5.2.

The statute proceeds to then list four exceptions to the privilege, which, it is conceded, are not involved here. Mrs. Westland argues that the statute clearly covers the situation at bar and therefore it was error to have admitted the psychiatrist's testimony. But the respondent argues that, for policy reasons, the statute should not be so read.

Our first task appears to be to zero in on the meaning of the critical words, "communication relating to diagnosis or treatment." If the words cover only verbal statements made by Mrs. Westland, then the majority of Dr. Talbert's testimony was not covered by the privilege. It is both informative and helpful to compare other privilege statutes to this one.

The *marital privilege* statute also speaks of "communication":

> " * * * [N]either may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture * * *." Ill. Rev. Stat. 1975, ch. 51, par. 5.

■■ In this State, and in most states, such privilege is limited to verbal exchanges between the marital couple. (See *People v. Simpson* (1976), 39 Ill. App. 3d 661, 350 N.E.2d 517; *The Husband-Wife Privileges of Testimonial Non-Disclosure*, 56 Nw. U.L. Rev. 208, 220 (1961).) The words "admission" and "conversation" reinforce that interpretation. That

"communications" may have a broader meaning in the patient-psychiatrist privilege statute is possible because the psychiatrist's trained observation is an important factor in diagnosis and treatment.

The *physician-patient privilege* is phrased differently:

"No physician or surgeon shall be permitted to disclose any *information* he may have acquired in attending any patient * * *." (Emphasis supplied.) Ill. Rev. Stat. 1975, ch. 51, par. 5.1.

At least one writer has stated that "information" and "communication" are treated as synonymous terms by the courts in the context of this privilege. (*The Physician-Patient Privilege*, 56 Nw. U. L. Rev. 263, 270 (1961).) However, the legislature has used two different words and the implication, at least, is that different meanings are to be attached.

■■ Dr. Talbert, in his testimony, only once directly attributed a statement to Mrs. Westland. However, other information to which he testified is obviously the result of his conversations with his patient, as he testified that he had little, if any, contact with her outside the hospital. Information concerning her dependency on her mother, and the causes of her mental breakdowns could only be obtained from "communications" with her. To our view, that information could not properly be directly testified to, nor, we think, would it be proper to introduce it indirectly by proceeding straight to Dr. Talbert's diagnosis. While it might have been proper for Dr. Talbert to testify to any of his observations, the testimony was not so limited.

The statute provides four exceptions to the *psychiatrist-patient privilege*: (1) When the psychiatrist determines that the patient should be hospitalized; (2) When the court orders an examination; (3) When the patient introduces his mental condition as an element of the case; and (4) In a malpractice or other similar action. (Ill. Rev. Stat. 1975, ch. 51, par. 5.2(a)-(d).) The privilege is also not applicable in an action under the Abused and Neglected Child Reporting Act. (Ill. Rev. Stat. 1975, ch. 23, par. 2060.) It is a general rule of statutory construction that the expression of certain exceptions is intended to be an exclusion of all others. (*People ex. rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649.) The respondent argues here, however, that there should be an additional exception when the best interests of a child are at stake. And it can be noted that some statutes specifically provide for this exception with safeguards to protect the patient's privacy. See *Usen v. Usen* (1971), 359 Mass. 453, 269 N.E.2d 442.

The creation of a statutory privilege is a legislative balancing between relationships on the one hand, which society thinks should be fostered through the shield of confidentiality, and the interests, on the other, served by disclosure of the information in a court of law. Here the legislature has determined that balancing and its judgment is that, except

for limited purposes, there is more value to encouraging and sustaining this particular kind of relationship. If a new balance is to be struck, it is for the legislature to strike it—not the court.

If psychiatric testimony is deemed necessary in order for the best interests of the children to be determined, the statute provides a procedure by which it can be obtained. As we have said, a court-ordered psychiatric examination is not privileged. Ill. Rev. Stat. 1975, ch. 51, par. 5.2(b).

## II

Because of the erroneous admission of privileged communications, this cause must be remanded. For that reason, we will not consider the arguments concerning the evidence of dependency.

■■ We would be found wanting, however, if we failed to point out that Mrs. Westland's parental rights were improperly terminated. A finding that the children should be taken from the mother because of her mental condition is not a finding that she is *unfit*. Parental rights cannot be terminated until the parent has been found unfit, as that term is defined in section 1 of the Adoption Act. (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1; Ill. Rev. Stat. 1975, ch. 37, par. 705—9.) None of the grounds for a finding of *dependency* are equivalent to the statutory definition of *unfit*. (Compare Ill. Rev. Stat. 1975, ch. 37, par. 702—5, to Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1.) Furthermore—not only must the unfitness of a parent be alleged in the petition, but the specific grounds therefor must be set forth with particularity. (*In re Rauch* (1977), 45 Ill. App. 3d 784, 359 N.E.2d 894, 897). Neither was done here. We cannot, in this situation, review a record and make initial findings of fact. *In re Bartha* (1969), 107 Ill. App. 2d 214, 245 N.E.2d 779.

## III

This brings us to the question raised by the cross-appeal, namely whether the *social worker's privilege* was properly applied. The statute states:

> "No social worker may disclose any information he may have acquired from persons consulting him in his professional capacity which was necessary to enable him to render services in his professional capacity * * *." Ill. Rev. Stat. 1975, ch. 23, par. 5320.

■■ The initial question is whether Mrs. Barney and Mrs. Pope are "social workers" covered by the statute. And the person who asserts the privilege has the burden of establishing it. (*Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92.) The privilege is found in the Social Workers Registration Act (Ill. Rev. Stat. 1975, ch. 23, par. 5301, *et*

*seq.*) which defines "social worker" broadly by describing the functions performed by social workers (par. 5302(f)), but also restricts use of the title "social worker" to those persons *registered* under the Act (par. 5303.1). *Ergo*, the "social worker" who is prohibited from testifying is one who is registered under the Act. It was not established by respondent that either Mrs. Barney or Mrs. Pope were registered social workers. Their testimony was improperly prohibited.

For such reasons, the judgment and orders of the Circuit Court of Vermilion County are reversed and the cause remanded for further proceedings.

Reversed and remanded.

CRAVEN, P. J., and REARDON, J., concur.