*In re* JAMES WALTON *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* CHERYL HUSKEY, Respondent-Appellant.)

Third District   No. 78-331

Opinion filed December 19, 1979.

Clifton J. Mitchell, of Prairie State Legal Services, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The Illinois Department of Children and Family Services (hereinafter the Department) instituted this proceeding by filing an amended and supplemental petition in the circuit court of Peoria County under the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 et seq.) requesting that David and James Walton be found neglected minors and that the guardianship administrator of the Department be appointed guardian of their persons. After an adjudicatory hearing, the trial court found the children neglected and adjudged them wards of the court. After a dispositional hearing, the children were placed under the guardianship of the Department.

On appeal, respondent Cheryl Huskey contends (1) that the trial court erred in allowing testimony as to the lack of emotional development of James Walton; (2) that the trial court erred in allowing testimony as to the physical condition of Angela Huskey at the time of her death; and (3) that the trial court's finding of neglect was against the manifest weight of the evidence.

At trial, Dr. Richard Hart, a pediatrician, testified as to the condition and development of James Walton. James had been an emergency room admittee at St. Francis Hospital in Peoria when first examined by Dr. Hart on June 6, 1977. That examination revealed a quiet, shy, and passive 17-

month-old child weighing 19 pounds. As plotted on a standard growth curve, James' height and weight were below the fifth percentile of children his age. In addition to his physical examination, Dr. Hart performed a Denver Developmental Assessment Examination, a comprehensive examination designed to indicate the status of an individual's social, language, gross motor, and fine motor development. The examination revealed that James' overall development was only that of a six- or seven-month-old child.

Dr. Hart testified that the failure of a child to develop physically, mentally and emotionally was most frequently associated with chronic illness or environmental deprivation. His examination of James revealed a nutritional iron deficiency resulting in anemia but no chronic illnesses. As a result of his examination and testing, Dr. Hart's diagnosis was failure to thrive due to environmental deprivation. He testified that of the more than 50 significantly malnourished children he had examined during his career, James was the most significantly delayed, developmentally and physically.

While at the hospital, James was treated with "very adequate nutrition and close observation and a lot of stimulation." In 10 days, his weight increased to 20 pounds four ounces and he became more playful and less passive. Dr. Hart indicated a child suffering from environmental and nutritional deprivation would show a significant gain in weight and development under similar circumstances and that the improvement in James' case supported his initial diagnosis "one hundred percent." A subsequent Denver Developmental Assessment Examination administered to James on November 21, 1977, after less than six months outside his home environment, showed continued developmental improvement to that of an 18- or 19-month-old child. Respondent objected at trial to Dr. Hart's testimony insofar as it related to the mental development of James Walton as being beyond the scope of the allegations of the neglect petition. The trial court overruled respondent's objection.

■■ Neglect proceedings brought pursuant to the Juvenile Court Act (hereinafter the Act) are considered civil in nature and are accordingly governed by the rules of evidence applicable to civil proceedings. (Ill. Rev. Stat. 1977, ch. 37, par. 704—6). Within this civil framework, the trial court may direct the proceedings so as to promptly and fully gather information bearing upon the current condition and future welfare of those subject to the Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—2(2)) and construe the Act liberally to carry out its purpose and policy (Ill. Rev. Stat. 1977, ch. 37, par. 701—2(4)).

■■ While no liberal construction can alter the fact that, in law or equity, to have evidence without pleading an issue is as fatal as pleading an issue

and not supporting it with evidence (see, *e.g.*, *Burke v. Burke* (1957), 12 Ill. 2d 483, 147 N.E.2d 373, 376; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616, 625; *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97, 99), none is here needed. Count I of the neglect petition alleged that James Walton was suffering from delayed growth, and the evidence presented by petitioner supported that allegation. Respondent's contention that only evidence of delayed physical growth was admissible finds no basis in the pleadings. At most the phrase "delayed growth" is vague and indefinite. It is where the allegations of a pleading are wanting in details that the opposing party is entitled to a bill of particulars. (See *Hemingway v. Skinner Engineering Co.* (1969), 117 Ill. App. 2d 452, 254 N.E.2d 133, 136.) Yet no bill of particulars was demanded nor attack on the pleadings made. After judgment, the pleading upon which the judgment is based is liberally construed in favor of the pleader. (See *Parrino v. Landon* (1956), 8 Ill. 2d 468, 134 N.E.2d 311, 315). As the petition did not limit itself to physical growth alone, we find no error in the trial court's admission of evidence dealing with mental and emotional growth of a child.

In re *Rauch* (1977), 45 Ill. App. 3d 784, 359 N.E.2d 894, and In re *Westland* (1976), 48 Ill. App. 3d 172, 362 N.E.2d 1153, cited by respondent, are inapposite. Those decisions dealt with the need to allege and prove unfitness under the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*) to perfect a cause of action to terminate parental rights thereunder. While respondent contends the petition at bar fails to state a cause of action based on inadequate mental development, she concedes a cause is stated insofar as physical development is concerned. We are thus returned to the previously discussed evidentiary question, as a cause of action based on neglect is thus acknowledged.

In addition to the testimony of Dr. Hart, Donald Bloomfield, a supervisor of the Department, testified as to the condition of respondent's deceased child, Angela Huskey, shortly before the child's death. Mr. Bloomfield stated that he was called to the emergency room of St. Francis Hospital on December 17, 1970, and found Angela lying on her back and staring at the ceiling. She was emaciated, had open sores and dried feces around the genital and buttocks areas, and was filthy. Two days after this observation, she died at the age of three months.

Respondent objected to Mr. Bloomfield's testimony insofar as it related to the death of Angela Huskey as being irrelevant, immaterial and prejudicial. The trial court overruled the objection and allowed the testimony to establish a pattern of similar environmental conditions.

In In re *Robertson* (1977), 45 Ill. App. 3d 148, 359 N.E.2d 491, the minor child was found to be neglected and placed in the Department's custody. In a subsequent proceeding to determine whether the parents

were unfit, the court stated that the unexplained death of a second child was evidence that the home environment was injurious to the welfare of the neglected child. In *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872, evidence of abuse of two children was presented to establish the existence of an environment injurious to the third child, who had not been physically abused. The court held that it was not unreasonable for the trial court to conclude the child was subjected to an environment of physical abuse and that it was in her best interest to adjudicate her a ward of the court.

■■ ■ In the case at bar, evidence of Angela Huskey's appearance and malnourished condition was similarly properly admitted to show a continuing pattern of neglect of the same nature. Angela's condition when Mr. Bloomfield examined her was similar to James' state when examined by Dr. Hart. At the time of Angela's death, David was similarly anemic, appeared very pale, and seemed undernourished. While the age of the evidence may affect its weight, it does not destroy its probative value (see *In re Gomez* (1977), 53 Ill. App. 3d 353, 368 N.E.2d 775, 779), and we find no error in its admission.

Having determined the admissibility of the testimony previously set forth, we must now direct our attention to the ultimate question of whether the trial court's finding that James and David Walton are neglected minors is against the manifest weight of the evidence.

■■ Under the Act, a neglected child is a minor who is neglected as to care necessary for his well-being or whose environment is injurious to his welfare. (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1).) The supreme court has stated:

> "Neglect, however, is the failure to exercise the care that the circumstances justly demand. It embraces wilful as well as unintentional disregard of duty. It is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes." (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624, 104 N.E.2d 769, 773, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24.)

The standard of proof in neglect cases is a preponderance of the evidence (Ill. Rev. Stat. 1977, ch. 37, par. 704—6), and only where there has been an abuse of discretion or the judgment has been against the manifest weight of the evidence should the decision be disturbed on appeal. *In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.

■■ We do not believe that this is such a case. In addition to the testimony previously reviewed, the evidence established at least one occasion when eight-year-old David Walton was unattended and unfed as respondent had left him alone for an evening without provision for his care. It was

also established that David was in a class for slow learners and his lagging approximately 24 months behind other children his age indicates a similar developmental problem as was shown in the case of James. Both children were subjected to what the trial court termed "unreasonable methods of punishment." David was forced to stand in the corner for long periods of time and was spanked repeatedly by respondent's fiance while James was placed in a closet-like utility room. While there was a conflict in testimony regarding the children's punishment, we find no reason for disturbing the trial court's resolution of this issue and hold its finding of neglect was neither an abuse of discretion nor against the manifest weight of the evidence.

Accordingly, the order of the circuit court of Peoria County adjudicating James and David Walton neglected minors and wards of the court is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.