*In re* A.C.B., Alleged to be a Neglected Minor (The People of the State of Illinois, Petitioner-Appellee, v. Patty Boothe Knell, Respondent-Appellant).—*In re* A.L.B. *et al.*, Alleged to be Neglected Minors (The People of the State of Illinois, Petitioner-Appellee, v. Patty Boothe Knell, Respondent-Appellant).

Fourth District   Nos. 4—86—0545, 4—86—0546 cons.

Opinion filed March 26, 1987.

Alan J. Novick, of Jennings, Novick, Eggan & Ostling, P.C., of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Elizabeth A. Robb, of Bloomington, guardian *ad litem.*

JUSTICE GREEN delivered the opinion of the court:

On June 2, 1982, the circuit court of McLean County entered an order finding A.C.B., born March 31, 1982, to be a neglected child (Ill. Rev. Stat. 1981, ch. 37, par. 702—4) and making her a ward of the court. On September 11, 1984, that court found A.L.B., born December 30, 1980, and M.A.B., born September 29, 1979, to also be neglected children and made them wards of the court. All three children

were the offspring of respondents Patty Boothe Knell and Avery Boothe. On January 22, 1986, a petition was filed in that court to terminate the rights of the parents as to A.L.B. and M.A.B., and on September 18, 1986, a similar petition was filed in regard to A.C.B. Avery Boothe was defaulted, the petitions were consolidated, and an evidentiary hearing was held. On August 11, 1986, the court entered an order finding the parents to be unfit parents and terminating their rights.

Respondent Patty Boothe Knell has appealed, contending: (1) the State failed to prove that she was an unfit parent; and (2) the State erred in considering evidence of sexual abuse of the minors and of her failure to recognize that the abuse and the sex play among the children was a serious problem. We hold that the evidence was sufficient to support a determination that she was unfit, but, in order to make the finding, the court had to consider the allegedly improper evidence. We conclude that the evidence was improperly received, not because it lacked probative value, but because it concerned an issue not pleaded with sufficient specificity to give the mother a fair opportunity to prepare to respond to it. Accordingly, we reverse and remand for a new hearing after the State is given an opportunity to make any necessary amendments to the petitions.

The basis of the June 2, 1982, decree finding A.C.B., then only a few months old, to be neglected was that the baby had not received necessary care and had failed to thrive. The basis of the September 11, 1984, decree of neglect in regard to the two older children was that the parents had (1) failed to provide a preschool environment which allowed for the necessary developmental and learning skills to prepare them for early levels of their formal education; and (2) failed to provide appropriate supervision to control their behavior. The petitions to terminate parental rights were brought under section 1 of "An Act in relation to the adoption of persons ***" (Ill. Rev. Stat. 1985, ch. 40, par. 1501). In regard to respondent Patty Boothe Knell, they alleged that she "failed to make reasonable progress" toward the return to her custody of the children in that she:

"1. Failed to make any progress through counseling, as directed in the case plan, missing numerous counseling sessions without a legitimate excuse, and failing to discuss any meaningful issues with the therapist at the sessions she did attend; and

2. Has failed to improve her parenting skills when interacting with the minors, this being demonstrated by her failure to improve in providing the children appropriate food and appropriate play activities during visitation."

On July 1, 1986, amended petitions were filed alleging, in addition to the above, that respondent failed:

"[t]o establish an adequate home environment or make any demonstrable progress toward establishing an adequate home environment in which to raise the minors."

The August 11, 1986, decree terminating Patty Boothe Knell's parental rights found that she was:

"an unfit parent by reason of her failure to make reasonable progress toward the return of the children to her custody within 12 months after an adjudication of neglected minor herein, as more specifically set forth in [the petition and amended petitions to terminate parental rights]."

In neither the petitions alleging the neglect of the children nor the petitions to terminate parental rights was there any allegation that the children were subject to sexual abuse nor that either parent had failed to exercise discipline and control over them in regard to sex play among one another. The evidence at the hearings on the petitions alleging neglect focused on the failure of the youngest child to thrive and the failure of the parents to provide an environment conducive to the children's educational development. At the hearing on termination of rights, most of the evidence concerned sexual abuse of the children and their sex play with each other. Much of the testimony was received over defense objection. The testimony of the witnesses at the latter hearing is summarized in the following paragraphs.

Mary Neanover testified that she served as a foster mother for the Illinois Department of Children and Family Services (Department). She explained that A.C.B. had been and remained in her care from the time A.C.B. was approximately four months old, and the other children, ages five and six at the time of the hearing, were in her care for six months in 1985. Neanover testified to observations she made with respect to the sexual conduct of the children. She said she noticed several episodes of sexual fondling between the older children despite warnings that such behavior was inappropriate. She said she also found the older children fondling A.C.B., and she found M.A.B. and a school friend fondling each other in the back yard. Neanover said that M.A.B. claimed her stepfather, Larry Knell, had lain on top of her and had fondled her vaginal area.

Lisa Pieper, an investigator with the Department, testified that she interviewed M.A.B. with respect to her sexual behavior. She said that the child explained episodes of sexual intercourse and sexual abuse by her stepfather, using anatomically correct dolls. Pieper indicated that when she approached Patty Knell and her husband with the

information, they both became angry, denied that such episodes had occurred and accused the children of lying concerning the incidents. Pieper testified that this type of sexual behavior and preoccupation was unusual for children of such a young age, and such conduct would have to have been learned.

Doris Bachtold, a home interventionist, testified at the hearing that she was assigned to monitor visits with A.C.B. and Patti Knell and to encourage Knell to provide educational stimulation and nutritious food for all the children. She testified that Knell played with the children, and, about half of the time, she would bring books and materials for the children to use. She said that Knell kept most of her appointments, the children seemed happy to see their mother, and, to the best of her knowledge, Knell had remained free of police involvement.

Gloria Cowdery, a caseworker with the Department, testified that after the removal of the children, respondent was provided with biannual evaluations of her progress toward completion of the specific goals established by the Department to secure the return of the children. She said that respondent continually failed to show improvement. Although she could not say that no progress had been made as far as settling down, she said she saw no real progress as far as respondent's understanding of how to care for children. She thought it would be "disastrous" to have the children returned to respondent. Finally, she noted that respondent continued to deny the existence of sexual abuse despite numerous admissions of abuse by the children.

Patty Knell testified that she was aware that her husband had pleaded guilty to a charge of sexually abusing a child (not her own) in June 1985, but she said she did not believe he was guilty. She further stated that she did not believe her husband had sexually assaulted her daughter, nor did she believe that the children fondled each other. Knell and her grandmother, Alberta Steele, both testified that Knell had a more stable lifestyle in the 12 to 18 months prior to the hearing, was employed, and had no police involvement during that time. In addition, they both said that respondent often brought nutritious food to the scheduled visits, played with the children, and sent the children cards and gifts.

Knell's therapist, Marilyn Erickson, testified that although Knell had missed a number of counseling appointments, she was becoming more consistent about keeping appointments in the two months immediately preceding the filing of the petition and in the months thereafter. She stated it was clear respondent loved the children, but she admitted that, if the children were returned home, there would have to be supervision. Erickson testified that respondent was making pro-

gress in regard to her work habits, making "appropriate" friends, and learning to live alone. However, Erickson also stated that Knell had indicated to her that when her husband was released from his term of imprisonment for sexual child abuse, she intended to live with him. Thus, if this testimony were to be believed, any placement of the children with Knell in the future would involve a placement in the home of a convicted child abuser.

■ The grounds stated by the trial court for finding Knell to be unfit were that she had failed to "make reasonable progress toward the return of the children to her custody within 12 months" of the adjudications of neglect. In order to properly make this determination, the circuit court was required to determine that the evidence leading to the finding was clear and convincing, and we should overturn the determination only if it is contrary to the manifest weight of the evidence. (*In re Adoption of Markham* (1981), 91 Ill. App. 3d 1122, 1127, 414 N.E.2d 1351; *In re Grotti* (1980), 86 Ill. App. 3d 522, 525, 408 N.E.2d 728.) This court has followed the general rule that, in a proceeding where termination of parental rights is sought, the best interests of the child can be considered only after a determination of parental unfitness has been made. (*In re Massey* (1976), 35 Ill. App. 518, 521, 341 N.E.2d 405; see also *In re Dalton* (1981), 98 Ill. App. 3d 902, 424 N.E. 1226.) However, in the case of *In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538, 542-43, the court indicated that in determining the reasonableness of progress that has been made by a parent, the best interests of the child may be considered.

Section 1(D)(m) of "An Act in relation to the adoption of persons ***," under which the petitions for termination were brought, provides that either the failure to make "reasonable efforts to correct the conditions which were the basis for the removal of the child" or a failure "to make reasonable progress toward the return of the child to such parent within 12 months" of a neglect adjudication are grounds for unfitness. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) The court in *Austin* pointed out that the failure to make "effort" and the failure to make "progress" are different matters, with the former being a subjective determination while the latter is an objective one requiring a showing of some "measurable" results. That court then explained that in determining whether the results are reasonable, the best interests of the children must be considered because, as this court indicated in the case of *Massey*, a major purpose of section 1(D)(m) is to assure that a neglected child will not be kept without a permanent parental relationship for an extended period.

Knell asserts that the evidence clearly sets forth that she has made

some progress toward the return of the children to her. She is correct in this respect. However, the progress must be "reasonable." The trial court has properly concluded from the evidence that a serious problem exists in regard to the uninhibited sexual activity of the children and their exposure to abuse. If the mother fails to recognize this and intends to resume living with her husband, who has been convicted of sexual abuse, a very extended period is likely to elapse before the children can be returned to the home. Under these circumstances, the trial court could properly conclude that the rate of progress the mother has made is not reasonable considering the right of the children to not be left in limbo for an unreasonable time.

Patty Knell next argues that, since two of the children were deemed to be neglected because of the failure of the parents to provide a proper preschool environment to develop learning, the State was required to show that the children were teachable before a determination could be made that reasonable progress for their return had not taken place. Her position might be well taken if the failure to make progress in that area were the only basis for a finding of unfitness, but that is not the situation. Because of the evidence of Knell's failure to accept the necessity of confronting the problems of the protection and discipline of the children in regard to sexual acts, the determination of Knell's unfitness was not contrary to the manifest weight of the evidence.

However, as we have indicated, reversible error did occur in the reception of the evidence which supports the decree. This court has previously held that in order to terminate parental rights for unfitness, the grounds of unfitness must be alleged with particularity. (*In re Westland* (1976), 48 Ill. App. 3d 172, 177, 362 N.E.2d 1153; see also *In re Rauch* (1977), 45 Ill. App. 3d 784, 359 N.E.2d 894.) Here, the petitions for termination made no mention of Knell's failure to respond to the sexual conduct and abuse problems of the children. Receipt of evidence on that point was unfair to her.

The decree of termination of rights must be reversed as to Patty Boothe Knell and the cause remanded to the circuit court of McLean County, where the State may further amend the petitions to conform to the proof it intends to offer. In due course, a new hearing shall be held on the merits.

Reversed and remanded with directions.

SPITZ, P.J., and LUND, J., concur.