EXECUTIVE COMMERCIAL SERVICES, LTD., Plaintiff-Appellee, *v.* JOHN DASKALAKIS *et al.*, Defendants-Appellants.—(ALBERT KORETZKY *et al.*, Third-Party Defendants-Appellees.)

Second District    No. 78-378

Opinion filed June 15, 1979.—Modified on denial of rehearing August 30, 1979.

Dorsey Baker, of Haight, Hofeldt, Davis & Jambor, of Chicago, for appellants.

Albert Koretzky and Joseph B. Platt, both of Chicago, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of this court:

Defendant-appellant, Leona Daskalakis, appeals from the dismissal by the court below of her counterclaims against plaintiff-appellee, Executive Commercial Services, Ltd., and of her third-party complaint against plaintiff's attorneys. Both the counterclaims and the third-party complaint allege violations of her civil rights.

■■ Leona Daskalakis is guarantor of equipment leases from Executive Commercial Services, Ltd., to Daskalakis Printing and Publishing Co. On August 11, 1977, plaintiff filed a complaint in the Circuit Court of Du Page County alleging that Leona Daskalakis and co-defendants, including her husband and other relatives, had defaulted on leases, had removed the printing equipment subject to plaintiff's secured leases from the State, and that one defendant (misidentified as Angeliki Daskalakis and not Leona Daskalakis) remained in the State and that this defendant planned to sell her home and leave the State. The relief requested included a judgment for the value of the leases, an award of attorney's fees, and a writ *ne exeat* (Ill. Rev. Stat. 1977, ch. 97, pars. 1-13)[1] against the defendant, and an injunction preventing the defendant from selling her home.

After an *ex parte* hearing, Judge Teschner issued the writ, set bond at $10,000, and also issued an injunction restraining the sale of the real estate. On August 12, 1977, Leona Daskalakis was taken into custody and later

---

[1] The purpose of a writ *ne exeat* is to prevent a defendant from leaving the jurisdiction of the court. However "It is an extraordinary writ, which should never be issued except upon the clearest showing that would justify depriving one of his liberty; ° ° °." *Earles v. Earles* (1951), 343 Ill. App. 447, 451, 99 N.E.2d 359, 361; see also 27 Ill. L. & Prac. *Ne Exeat* §1 (1956); Allen, *Mandamus, Quo Warranto, Prohibition and Ne Exeat*, 1960 U. Ill. L. F. 102; Comment, *Civil Procedure—Constitution and Equitable Principles Limit Ese of Ne Exeat (Illinois)*, 1951 U. Ill. L. F. 659.

brought before the judge on the "return of the writ." After a hearing at which the defendant was represented by counsel, a motion to quash the writ was denied and bond was continued at $10,000. Defendant was ordered to contact the plaintiff daily under the threat of arrest and was asked to call her husband in Greece to see if he would send the money owed to plaintiff. On August 31, 1977, Judge Unverzagt vacated the writ apparently on the authority of *United States v. Shaheen* (7th Cir. 1971), 445 F.2d 6, 11, which cautioned that the writ *ne exeat* "should not be employed for any purpose akin to imprisonment for a debt."

On September 7, 1977, defendant filed her answer accompanied by a counterclaim alleging violation of her civil rights as protected by 42 U.S.C. 1983 (1976). This counterclaim charged that the complaint contained several knowingly false assertions including that the defendant was a lessor, and not merely a guarantor of the leases; that payments were in default when they were not; that the defendant personally participated in the removal of the equipment; and that the defendant was about to remove some of plaintiff's property from the State.

On September 13, 1977, Judge Unverzagt dismissed the complaint, vacated the injunction, and transferred the matter to Judge Teschner for proceedings on the counterclaim. On September 23, 1977, Judge Teschner ruled on a discovery motion made by the defendant. On November 1, 1977, the judge denied the defendant leave to file amended counterclaims due to a lack of notice. On November 3, 1977, defendant filed for a change of venue based on a general allegation that Judge Teschner was prejudiced against her. This motion for a change of venue was denied. On this date the judge also allowed the defendant to amend her counterclaims to include allegations that the plaintiff wrongfully refused to agree to vacate his injunction and to add a third-party claim against plaintiff's attorneys. Finally, on this date, the judge reinstated plaintiff's complaint.

On January 10, 1978, plaintiff moved to dismiss the counterclaims and the third-party claims pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45). After briefing and argument, this motion was allowed on April 24, 1978. On May 12, 1978, defendant moved to file additional counterclaims for common law torts as opposed to claims under section 1983. On May 15, 1978, a rehearing on the dismissal of the counterclaims was denied, as was leave to file the additional counterclaims. The judge further found that there was no just reason to deny enforcement or appeal of his ruling. It is from this order and from the denial of the change of venue that defendant brings this appeal, under Supreme Court Rule 304 (Ill. Rev. Stat. 1977, ch. 110A, par. 304).

Defendant raises three assertions on appeal: that her counterclaims

were improperly dismissed under section 45 of the Civil Practice Act, that the trial court abused its discretion in denying her motion under section 46 of the Civil Practice Act to amend her counterclaim, and that her motion for a change of venue was improperly denied.

■■ Whether or not the complained of conduct, if proved, is sufficient to state a cause of action under 42 U.S.C. §1983 (1976) (deprivation of civil rights under color of State law) is a complex question. Defendant in support of her counterclaim relies on the line of cases represented by *Hall v. Garson* (5th Cir. 1970), 430 F.2d 430, which hold that a State statute authorizing a landlord to enforce a lien for unpaid rent through self-help make a landlord's action under the statute a deprivation of civil rights under color of State law. However, as the court in *Hansen v. Ahlgrimm* (7th Cir. 1975), 520 F.2d 768, 771, points out, at most such cases "stand for the limited proposition that actions of a private individual, pursuant to express state authorization, which possess the characteristics of a traditional state function (such as forced entry into a private residence to execute a lien), may be viewed as state action."

It appears that the most widely followed rule is at the mere fact that a private party used a State court to deprive another of his civil rights does not supply the element of State action required by section 1983. (*Phillips v. International Association of Bridge, Structural & Ornamental Iron Workers* (9th Cir. 1977), 556 F.2d 939, 940; *Hill v. McClellan* (5th Cir. 1974), 490 F.2d 859, 860; *Skolnick v. Martin* (7th Cir. 1963), 317 F.2d 855, 857, *cert. denied* (1963), 375 U.S. 908, 11 L. Ed. 2d 146, 84 S. Ct. 199.) Thus, in *Luker v. Nelson* (N.D. Ill. 1972), 341 F. Supp. 111, 121, the court facing a situation similar to the case at bar held that in a section 1983 suit against a private party who may have procured a false arrest, the victim must prove that the private party conspired with the police to achieve a constitutional deprivation. There is no such conspiracy allegation in the case at bar.

In support of her position, defendant relies chiefly on *Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598. In particular, defendant cites Justice Brennan's view that a private person acts under color of State law when he "in some way acts consciously pursuant to some law that gives him aid, comfort, or incentive, * * *" (398 U.S. 144, 212, 26 L. Ed. 2d 142, 185, 90 S. Ct. 1598). This citation, however, is from Brennan's dissent and is apparently not shared by a majority of the court. The *Adickes* case concerned the refusal of a Mississippi restaurant to serve a white "Freedom School" teacher who was accompanied by black students. The teacher was subsequently arrested for vagrancy. The complaint contained an allegation of conspiracy between the State and the police to violate the teacher's civil

rights. The complaint, however, failed to survive a motion for summary judgment as the trial court found a failure to allege any facts from which a conspiracy might be inferred. The Supreme Court reversed, holding that the conspiracy count was improperly dismissed because of the possibility of an understanding between the restaurant employees and the police. Thus the majority holding in *Adickes* does *not* waive the requirement of proving a conspiracy between a private party and a State official. And thus the complaint at bar, which contained no conspiracy allegation, failed to state a cause of action under 42 U.S.C. §1983.

In her petition for rehearing, defendant cites the following language from the recent case of *Flagg Brothers, Inc. v. Brooks* (1978), 436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729, to support her proposition that a majority of the Supreme Court has now adopted Justice Brennan's position in *Adickes*:

" '[W]*hatever else may also be necessary* a show that a person has acted "under color of [a] statute" for purposes of §1983, * * * we think it essential that he act with the knowledge of and pursuant to that statute.' " (436 U.S. 149, 156, 56 L. Ed. 2d 185, 193, 98 S. Ct. 1729, 1733.) (Emphasis ours.)

In the present case it is clear that the plaintiffs were acting with knowledge of and pursuant to the *ne exeat* statute. However, as the underlined portion of the above quotation clearly indicates, this is only one of a number of essential elements for a cause of action under section 1983. The *Flagg Brothers* decision is in no way an aid to defendant's state action argument. In *Flagg Brothers* the Supreme Court found that the provision of the Uniform Commercial Code allowing enforcement of a warehouseman's lien did *not* bring actions under this statute within the protections of section 1983. Indeed, as the dissent in *Flagg Brothers* cautions (436 U.S. 149, 168), this decision may be said to narrow the scope of cases like *Hall v. Garson*, relied on by the defendant here.

In her third-party complaint, which was also dismissed, defendant sought damages from plaintiff's attorneys for their participation in the legal actions against the defendant. It is well settled that attorneys, while "officers of the court," are not thereby clothed with color of State law for section 1983 purposes. (See *Skolnick* and *Hill*.) The case against plaintiff's attorneys is to be judged by the same standards as the case against plaintiff, and thus defendant's complaint also failed to state a cause of action under section 1983 against plaintiff's attorneys.

While defendant's counterclaims failed to state a cause of action under the Federal civil rights act, a motion to dismiss under section 45 of the Civil Practice Act "does not lie if a good cause of action is stated, although not the one intended by plaintiff." (*Browning v. Heritage*

*Insurance Co.* (1975), 33 Ill. App. 3d 943, 947, 338 N.E.2d 912.) Thus if the factual allegations of the dismissed counterclaims stated a cause of action for common-law tort, their dismissal was error.

■■ Defendant asserts that her counterclaims state causes of action for false imprisonment, malicious prosecution, and abuse of process. However, false imprisonment does not lie where the restraint on liberty was the result of formal legal process. (*Kay v. Boehm* (1975), 32 Ill. App. 3d 853, 336 N.E.2d 781; *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 386 N.E.2d 444; *Jacobson v. Rolley* (1975), 29 Ill. App. 3d 265, 330 N.E.2d 256; see also 32 Am. Jur. 2d *False Imprisonment* §4, (1967), and Prosser, *Torts* §11, at 49 (4th ed. 1971).) Here the fact that writ *ne exeat* was issued by the court would negate an action for false imprisonment.

■■ There is also a fatal defect in the malicious prosecution theory. It is well settled that "the termination of a prior proceeding in favor of the plaintiff [here the defendant] is an essential element in a cause of action for malicious prosecution which must be factually set forth in the complaint." (*Kay*, at 855.) While the defendant's counterclaim does contain a conclusionary allegation that the writ *ne exeat* was "vacated," defendant has failed to plead any facts that would show that the original proceeding was terminated.

Defendant cites Dean Prosser for the proposition that a case such as this is an exception to the general rule that the main proceeding must have been terminated before an action will lie on a malicious prosecution theory:

> "Ordinarily the plaintiff must prove the termination of the former proceeding in his favor. But there are necessary exceptions where, as in the case of putting a man under bond to keep the peace, the proceeding is an ex parte one and relief is granted without an opportunity for the party against whom it is sought to be heard. This is true also as to proceedings ancillary to a civil suit, such as attachment or arrest under civil process, as to which, if they are themselves unjustified, it is unnecessary to show a favorable termination of the main action. It usually is held, however, with a little authority to the contrary, that if an opportunity has been given to contest the facts, the plaintiff must show a favorable termination of the ancillary proceeding itself. As in the case of criminal proceedings, a termination of the suit by way of compromise and settlement is not sufficient to support the cause of action; but the filing of a bond for the release of property attached is not regarded as such a compromise, since the party acts under compulsion."

Prosser, *Torts* §120, at 853-54 (4th ed. 1971).

■■ However, we find that this exception is not applicable to the facts of

this case. In *March v. Cacioppo* (1962), 37 Ill. App. 2d 235, 246-47, 185 N.E.2d 397, 402, the court analyzed this passage from Prosser and the reasons for the termination requirement. There are four justifications for the requirement:

    1. *un*favorable termination of the prior proceeding would establish probable cause and bar an action for malicious prosecution,

    2. plaintiff cannot be permitted to make a collateral attack on the original proceeding,

    3. until the complaining party has shown the action against him was unsuccessful, he has not shown any recoverable damages,

    4. if the complaining party was permitted to sue before he had successfully defended the first suit, he might secure recovery for the bringing of an action against him which the entertaining court eventually found to be well brought.

The *March* case concerned a lessor's wrongful action against his lessees for unpaid past due rent, as well as rent under the unexpired lease and for having garnished the lessees' bank account. The major portion of the suit concerning rent under the unexpired lease had been terminated in favor of the lessees before the malicious prosecution action was begun. The court found this termination sufficient to allow the lessees to bring their action without waiting for termination of the still pending action for past rent. In the present case there is no allegation that a major portion of the complained of action has been decided on the merits. In light of the four-pronged rationale listed above, the termination requirement must be strictly construed to prevent premature claims of malicious prosecution. Thus, the termination of the prior suit in favor of the plaintiff must be a determination that deals with factual issues. Compromises, voluntary dismissals, and even involuntary dismissals are not such terminations. (*Kurek v. Kavanagh, Scully, Sudow, White & Frederick* (1977), 50 Ill. App. 3d 1033, 365 N.E.2d 1191, *Patete v. Baker* (1973), 14 Ill. App. 3d 385, 302 N.E.2d 416 (abstract).) In the present case we find that the issue of the propriety of the writ *ne exeat* is at least partially tied to the merits of the larger proceeding and that the four rationales for requiring prior determination are applicable. Thus defendant's counterclaim based on malicious prosecution was properly dismissed as premature.

■■■ There are only two elements for the tort of abuse of process: (1) existence of an ulterior motive or purpose, and (2) an act in the use of legal process not proper in the regular prosecution of proceedings. (*Holiday Magic, Inc. v. Scott* (1972), 4 Ill. App. 3d 962, 966, 282 N.E.2d 452, 455.) Defendant's amended counterclaim does allege an ulterior purpose: the holding of defendant as hostage to extract money from the codefendants. This is indeed the type of ulterior purpose envisioned by the tort of abuse of process. (Prosser, *Torts*, §121, at 857-58 (4th ed. 1971);

*Shatz v. Paul* (1955), 7 Ill. App. 2d 223, 129 N.E.2d 348.) If defendant can prove her allegations that the writ *ne exeat* was obtained for an improper purpose she is entitled to relief from the tort of abuse of process. For this reason, we find that the trial court erred in dismissing defendant's counterclaims for a failure to state a cause of action.

In her third-party claim, defendant also seeks recovery against plaintiff's attorneys on common law tort theories. In support of her claim, defendant primarily relies on the case of *Burnap v. Marsh* (1852), 13 Ill. 535, in which the plaintiff was granted a cause of action against the defendant attorneys for maliciously bringing an action for a writ *ne exeat.* However, because of the termination element previously discussed, any third party action based on allegations of malicious prosecution is likewise premature.[2] While the *Burnap* decision is not directly controlling, it does suggest certain limitations on malicious prosecution and abuse of process actions against attorneys. The *Burnap* court pointed to allegations that the attorneys were acting without knowledge or instruction of their clients and that they had some "purpose of their own." (13 Ill. 535, 538.) There are no such allegations in the present case. Thus we find that the third-party complaint was properly dismissed below.

Having determined that defendant's counterclaims allege facts sufficient to state a cause of action for abuse of process and were, therefore, improperly dismissed, it becomes unnecessary to consider the trial court's refusal to grant leave to further amend the counterclaims. See *People v. Northbrook Sports Club* (1977), 53 Ill. App. 3d 331, 335, 368 N.E.2d 663, 667.

■■ We now turn to the final issue raised by the defendant, the denial of her motion for a change of venue. Although not raised by the parties, the first question is whether the denial of a change of venue is properly before this court. A ruling on a change of venue is neither a final order nor is it appealable under any exception to the final order rule. (*Mexicali Club, Inc. v. Illinois Liquor Control Com.* (1976), 37 Ill. App. 3d 797, 347 N.E.2d 190.) At least one appellate court has resisted an attempt to bootstrap an appeal of a venue ruling onto an interlocutory appeal under Supreme Court Rule 307. (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 428, 380 N.E.2d 1106, 1115.) We find no reason why a similar conclusion is not warranted here for an appeal under Supreme Court Rule 304.

Moreover, we find that the court below properly denied defendant's motion for a change of venue. The question is whether the trial court had ruled on "any substantial issue in the case" prior to the motion for a venue change. If such a ruling had been made, defendant's motion, which was

---

[2] An action against plaintiff's attorneys based on a theory of false imprisonment is barred by their resort to formal legal process. See page 766 above.

not based on any specific allegation of prejudice, would have been insufficient. (Ill. Rev. Stat. 1977, ch. 110, par. 503.) The reason for this policy is that a party should not be permitted to determine a judge's attitude toward the issues in a case and then remove him on the basis of a conclusionary allegation of prejudice. Petitions advanced to avoid expected adverse ruling should not be granted. *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 447, 362 N.E.2d 33, 36.

■■ The defendant moved for a change of venue on November 3, 1977. Prior to this date Judge Teschner had ruled on at least two motions: he granted defendant's request for a discovery order and denied the defendant leave to file amended counterclaims due to a lack of notice. Moreover, it was Judge Teschner who had some four months earlier issued the writ *ne exeat* and the injunction. This case had been reassigned to Judge Teschner on September 23, 1977. Defense counsel made two appearances before the judge after reassignment and prior to the motion for change of venue. This motion was made immediately preceding an anticipated ruling on plaintiff's motion to reinstate the complaint. Also, Judge Teschner's early involvement in the case is of significance. In *In Re Dependency of Bartha* (1969), 107 Ill. App. 2d 214, 216-17, 245 N.E.2d 779, 780, this court held that the reassignment of a matter to a judge did not make the proceeding "new" and thus did not require the automatic granting of a change of venue petition. Defendant correctly argues that she had no opportunity to request a change of venue prior to the reassignment to Judge Teschner. However, once the case was reassigned, if she felt Judge Teschner was prejudiced against her, she should have made her motion for a venue change before he was allowed to rule on the other motions. Thus defendant's motion was properly denied because it was untimely.

In sum, we hold that while defendant's counterclaims fail to state causes of action under the Federal civil rights act or for the common law torts of false imprisonment or malicious prosecution, the allegations in her counterclaims do state a cause of action for an abuse of process and therefore were improperly dismissed. We further hold that the defendant's third-party complaint was properly dismissed and that the defendant's motion for a change of venue was properly denied.

Affirmed in part, reversed in part, and remanded for further proceedings.

RECHENMACHER and SEIDENFELD, JJ., concur.