VIPAL ARORA *et al.*, Plaintiffs and Counterdefendants-Appellees, v. DAVID CHUI *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District No. 2—95—0051

Opinion filed April 26, 1996.

322

McLAREN, P.J., dissenting.

William J. Harte, Sylvia A. Sotiras, and Joan M. Mannix, all of William J. Harte, Ltd., of Chicago, and Charles M. Jardine, of Jardine & Jardine, Ltd., of LaGrange, for appellants.

Eugene L. Bennett, of Bennett & Bennett, Ltd., of Chicago, for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The trial court granted the motion to dismiss counterplaintiffs' counterclaims for malicious prosecution and abuse of process pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)). The counterplaintiffs, David Chui, Lillian Chui, and Joseph Lau, (hereinafter referred to as the Chuis and/or Lau, respectively) appeal. We affirm.

On November 6, 1992, the counterdefendants, Vipal Arora and Nirmal Arora (hereinafter referred to as the Aroras), filed a complaint for specific performance of a contract for the sale of real property. The complaint alleged that the Aroras had entered into a valid

real estate contract with Lau, as the duly authorized agent of the Chuis, for the purchase of the Chuis' home in Oak Brook, Illinois, at a price of $1,440,000. The Aroras requested that the Chuis be enjoined from conveying or disposing of any interest in the property and that the Chuis be ordered to perform the alleged contract. On November 10, 1992, the Aroras filed a *lis pendens* notice with the Du Page County recorder of deeds.

The Aroras did not attach a copy of the alleged real estate contract to their complaint. However, the Chuis' motion to dismiss the complaint on that basis was denied. The Chuis subsequently filed an answer to the complaint, which denied that the parties had ever entered into a contract. The Chuis also filed counterclaims for malicious prosecution and abuse of process.

The counterclaims alleged that on October 31, 1992, the Aroras, Robin Zahran (the Aroras' financial advisor), Zahran's wife, real estate broker Renuka Shah, and Mehri Briant (an agent for counterplaintiff Lau) were present on the Chuis' property. Lau had added a provision to "Rider 412" of the alleged contract which stated that the house in all respects was to be sold in "as is" condition. The Aroras would not agree to the "as is" provision, and Zahran crossed out the "as is" provision which had been inserted by Lau. The Aroras initialled the change. Zahran gave the contract to Briant, and Briant told everyone present that this was now a counteroffer and that there was another party interested in purchasing the property. The counterclaims further alleged that Zahran then told Briant not to play games with him and that if Briant did not get the contract without the "as is" provision, Zahran would "get a lot" for the Aroras and build them a home. Briant began turning off the lights at the property in preparation to leave when Shah indicated that the seller should be given time to think about the offer. Shah then added a provision to the contract which stated, "Sellers have till November 2, 9:00 p.m." The Aroras again initialled the change.

The counterclaims further alleged that on November 2, 1992, Briant asked Shah whether the Aroras would execute a "Rider 406," which is a rider providing that the buyer was accepting the house in an "as is" condition. Shah replied that the Aroras would not execute such a rider.

The counterclaims also stated that on November 2, 1992, Briant presented the Aroras' offer to Lau, who crossed off the provision that the sellers had until November 2, 1992, at 9 p.m. and initialled the change. Lau also wrote on the offer, "This contract serves as a back-up offer." Lau executed a rider 406 to be part of the back-up offer, and Briant inserted the rider 406 into paragraph 9 of the Aroras'

offer, indicating that a rider 406 was required to be part of the back-up contract. Lau then executed a valid real estate contract for the Chui property with Vijay and Nishi Bajaj.

The counterclaims further alleged that the Aroras had wrongfully, maliciously, without probable cause, and for the purpose of preventing the Chuis from selling their property as they saw fit filed a *lis pendens* notice with the Du Page County recorder of deeds, which gave notice of the pendency of the Aroras' action against the Chuis and which indicated that the Aroras had entered into a valid real estate contract on October 31, 1992, even though the Aroras knew this to be false. In addition, the Chuis alleged that, as a result of the Aroras' actions, the Chuis were unable to close the sale of the Chui property to the Bajajs and alleged specific monetary damages suffered as a result of the Aroras' misconduct.

The Aroras filed a response to the counterclaims wherein they admitted that, because of the *lis pendens* notice, the Chuis had been unable to convey the property to anyone else.

On March 25, 1994, the Chuis filed a "Motion to Set Discovery Cutoff Date And Set Matter for Trial," which alleged that the Aroras had not taken any depositions or requested any discovery.

On April 15, 1994, the parties entered a stipulation to dismiss, which stated that the Aroras' complaint was to be dismissed with prejudice, that the Aroras would file a release of their *lis pendens* on the Chuis' property, and that the Bajajs, who had been granted leave to intervene, would dismiss their complaint with prejudice. The stipulation also stated that the Chuis' counterclaims were not dismissed and would be the only actions remaining to be determined by the court, all other matters having been resolved by the parties.

On December 8, 1994, trial commenced on the counterclaims. After counsel for the Chuis had completed his opening statement, the Aroras' counsel made oral motions to dismiss the Chuis' malicious prosecution and abuse of process claims. The trial court stated that it would defer ruling on the motions until the close of the Chuis' proof.

The trial was continued and subsequently the Chuis presented their case in chief. Briant testified for the Chuis and detailed the negotiations between the Aroras and the Chuis, including their inability to come to agreement with regard to the rider 406, by which the Aroras would have accepted the house in an "as is" condition. Briant also testified that she took the Aroras' final offer, made after the time for accepting the plaintiffs' preceding counteroffer, to Lau. At the same time, Briant presented Lau with an offer from the Bajajs. Lau executed the Bajaj contract and wrote on the Aroras' offer that it was a back-up offer and made some changes to it, including

again writing "as is" on the document. Briant also testified that she told Shah that the Aroras' offer was a back-up offer when Briant returned home that night. Later that evening and again the next morning, Briant claimed she received a number of telephone calls from Shah and Zahran, wherein Shah and Zahran threatened to sue, as well as put a *lis pendens* on the house and also stated that nobody would get the house for three years.

Lau also testified. According to Lau, the Chuis executed powers of attorney in favor of Lau, which Lau used in handling the sale of the Chuis' house. Lau testified regarding the history of the negotiations with the Aroras and also that he was unable to close the sale with the Bajajs because of the *lis pendens.*

The parties entered into a stipulation regarding costs of $48,000 that the Chuis incurred as a result of the Aroras' filing of the *lis pendens* notice.

After the Chuis rested their case on the issue of liability, the Aroras renewed their oral motions to dismiss, which they identified for the first time as section 2—615 motions to dismiss (735 ILCS 5/2—615 (West 1994)) for failure to state a cause of action. The trial court stated that, in light of the nature of the motions, it could not consider the evidence which had been presented and was limited to reviewing the pleadings to determine if the counterclaims stated cognizable causes of action. The trial court then dismissed both the malicious prosecution and the abuse of process counterclaims with prejudice.

■ In view of the awkward proceedings before the trial court, we are compelled to detail the proper timing for making section 2—615 motions (735 ILCS 5/2—615 (West 1994)) at the trial court level. While section 2—615 (735 ILCS 5/2—615 (West 1994)) does not explicitly place a specific time limit on bringing the motion at the trial level, our supreme court has stated that "the best measure of a complaint's sufficiency *** is whether the defendant is able to answer [it]." *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981). Thus, where "a complaint substantially although imperfectly alleges a cause of action, the defendant waives any defect by answering it without objection." *Burks Drywall, Inc. v. Washington Bank & Trust Co.*, 110 Ill. App. 3d 569, 572 (1982). By answering the counterclaims, the Aroras thus waived the defects alleged to be present therein.

The Aroras point to an exception to the above rule and contend that they may raise at any time a claim that the counterclaims failed to state causes of action. See *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 61 (1994). However, our supreme court has recently held:

    "[T]his exception applies *only* when a complaint fails to state *a*

*recognized* cause of action [in this State]. The exception does not apply where the complaint states *a recognized* cause of action, but contains an incomplete or otherwise insufficient statement of that cause of action." (Emphasis added.) *Adcock*, 164 Ill. 2d at 61-62. See *Lambert v. City of Lake Forest*, 186 Ill. App. 3d 937, 940 (1989) (a motion to dismiss under section 2—615 may be made at any time "if it appears that, as a matter of law, the complaint wholly and absolutely fails to state a cause of action which the law will recognize"). In other words, courts draw a distinction between a complaint that alleges no cause of action, which may be challenged at any time, and one which defectively or imperfectly alleges a cause of action. *Adcock*, 164 Ill. 2d at 62, citing *Swager v. Couri*, 77 Ill. 2d 173, 185 (1979).

In *Swager*, the plaintiffs brought a complaint alleging that the defendants tortiously interfered with a contractual relationship. After a trial, the court entered judgment against the defendants on a jury verdict. The defendants then filed a post-trial motion contending that the plaintiffs' complaint failed to state a cause of action by not alleging an essential element—lack of justification. The motion also pointed out that the defendants failed to prove that element at trial. The trial court denied the motion, but the appellate court reversed, finding that the plaintiffs' complaint was defective for failing to plead lack of justification. The supreme court found that the defendants could not challenge the sufficiency of the complaint. However, the court refused to stop its analysis there. It noted that it could affirm on other grounds and, in this case, a remand would serve no purpose where the proofs adduced at trial showed a complete absence of evidence on the element of lack of justification. *Swager*, 77 Ill. 2d at 187. The supreme court found that the trial court should have entered a judgment *n.o.v.* in favor of the defendants. Accordingly, it affirmed the appellate court's ruling which had reversed the judgment in favor of the plaintiffs.

Similarly, after filing their answer, the Aroras could not attack the sufficiency of the Chuis' counterclaims via a section 2—615 motion to dismiss. Clearly, malicious prosecution and abuse of process are recognized causes of action in Illinois. Thus, the trial court should have dismissed the Aroras' motion to dismiss before it heard evidence in the case and should not have entertained the motion after the Chuis presented their case in chief.

■ However, we note that the present case is similar to *Swager*, where the supreme court determined that a remand would serve no useful purpose since it was apparent that a judgment *n.o.v.* should have been granted for the defendants because the plaintiffs failed to

prove an essential element of their cause of action. See *Swager*, 77 Ill. 2d at 187. Here, it would have been proper for the Aroras to move for a directed finding at the close of the Chuis' case (see 735 ILCS 5/2—1110 (West 1994)). A trial court may grant the defendant a directed finding at the end of the plaintiff's evidence if: (1) as a matter of law the plaintiff has not made a *prima facie* case for recovery; or (2) after weighing the evidence, the court concludes that the *prima facie* case has been negated. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154-55 (1980).

In the interests of judicial economy and of maintaining a sound body of precedent, we will determine whether the trial court should have granted a directed finding in favor of the Aroras on the Chuis' claims of malicious prosecution and abuse of process.

■ The tort of malicious prosecution is not favored under Illinois law. *Schwartz v. Schwartz*, 366 Ill. 247, 250 (1937). Two of the necessary elements to establish a *prima facie* case for malicious prosecution are: (1) the commencement or continuance of an original complaint or civil judicial proceeding by the defendant to the malicious prosecution action; and (2) the termination of that proceeding in favor of the complainant. See *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 473 (1990); *Pettey v. First National Bank*, 225 Ill. App. 3d 539, 546 (1992). In addition, the determination that terminates the underlying proceeding must be a determination that deals with factual issues. *Executive Commercial Services, Ltd. v. Daskalakis*, 74 Ill. App. 3d 760, 767 (1979).

In *Joiner v. Benton Community Bank*, 82 Ill. 2d 40 (1980), the plaintiff brought a complaint against the defendant for malicious prosecution. The complaint was based on the fact that a criminal theft charge against the plaintiff had been dismissed. The record showed that the plaintiff had "entered into an agreement" to have the charges dismissed against him. *Joiner*, 82 Ill. 2d at 46. The supreme court held that, where a plaintiff to a malicious prosecution action has agreed to the dismissal of the underlying charges against him, he cannot maintain a claim for malicious prosecution. In so holding, the court stated:

> "[O]ne who procures or agrees to a disposition of the charges against him in a manner which leaves the question of his innocence unresolved may not bring a malicious prosecution action based upon such charges. [Citations.] Many of the cases state the reason for the rule to be that plaintiff admits the existence of probable cause when he enters into or procures a compromise or an agreement for dismissal of the charges against him; others state that plaintiff is thereafter 'estopped' to deny that probable cause existed." *Joiner*, 82 Ill. 2d at 45-46.

Recently, in *Swick v. Liautaud*, 169 Ill. 2d 504 (1996), the plaintiff filed a malicious prosecution claim against the defendant after a criminal theft charge against the plaintiff was nol-prossed. The supreme court noted that an issue of first impression was presented as to whether the *nolle prosequi* of an underlying criminal charge constituted a favorable termination in a malicious prosecution action. The court noted that the majority rule is that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused. The abandonment of the proceeding is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an *agreement* or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impractibility of bringing the accused to trial. *Swick*, 169 Ill. 2d at 513.

The *Swick* court reversed the judgment in favor of the plaintiff and held that the plaintiff had not met his burden to show that the *nolle prosequi* was entered for reasons consistent with his innocence. The court concluded by explaining that, although it may appear that the defendants had a right to a judgment *n.o.v.*, as the plaintiff did not establish an element of the cause of action (*i.e.*, favorable termination), fairness required that the cause be remanded for a new trial because this was an issue of first impression in Illinois.

*Swick* is not controlling of the outcome in the present case. Here we are not dealing with an issue of first impression or a *nolle prosequi* in an underlying criminal proceeding. Unlike *Swick*, the present case involves an *agreed settlement* in an underlying civil action. A defendant in a prior criminal proceeding most likely will not have had any control over the State's decision to have the charges against the defendant nol-prossed. In that type of case, *Swick* holds that the plaintiff is entitled to prove that no reasonable grounds existed to pursue the charges. The present case, however, is more like *Joiner*, where the plaintiff agreed to the dismissal of the underlying criminal charges. Similarly, the defendants here agreed to the settlement of the underlying civil suit.

In contrast to malicious prosecution claims involving the *nolle prosequi* of an underlying suit, the law regarding malicious prosecution claims based on the settlement of an underlying civil suit is well settled. It has been repeatedly held that to maintain a claim for malicious prosecution, the termination of the prior civil suit in favor of the plaintiff must be a determination that deals with factual issues;

compromises, *settlements* (*Schwartz v. Schwartz*, 366 Ill. 247 (1937)), voluntary dismissals, or even involuntary dismissals (*Siegel v. City of Chicago*, 127 Ill. App. 2d 84 (1970)) are not such terminations. *Sutton v. Hofeld*, 118 Ill. App. 3d 65, 68 (1983); *Smith v. Aaron, Aaron, Schimberg & Hess*, 112 Ill. App. 3d 653, 657 (1983); *Executive Commercial Services, Ltd. v. Daskalakis*, 74 Ill. App. 3d 760, 767 (1979); *Kurek v. Kavanagh, Scully, Sudow, White & Frederick*, 50 Ill. App. 3d 1033, 1038 (1977).

In *Bonney v. King*, 201 Ill. 47 (1903), the plaintiff brought a malicious prosecution action against the defendants, alleging that the defendants brought four meritless suits against the plaintiff in order to coerce the plaintiff into signing a power of attorney. The four suits were still pending and undetermined at the time of the malicious prosecution action. The supreme court held that the plaintiff could not maintain his malicious prosecution action without alleging that the suits which were the foundation for the malicious prosecution action had been "legally terminated." *Bonney*, 201 Ill. at 50.

In *Sutton v. Hofeld*, 118 Ill. App. 3d 65, the complainant in a malicious prosecution action was dismissed, with prejudice, from a prior medical malpractice suit with multiple defendants. The complainant's subsequent malicious prosecution suit was dismissed because the complainant had failed to allege facts sufficient to state a cause of action. *Sutton*, 118 Ill. App. 3d at 67. The appellate court affirmed, noting that nothing in the record indicated the reason for the dismissal of the previous action and a "dismissal with prejudice," standing alone, does not indicate a favorable termination. *Sutton*, 118 Ill. App. 3d at 68. Relying on *Kurek v. Kavanagh, Scully, Sudow, White & Frederick*, 50 Ill. App. 3d 1033, 1038 (1977), the *Sutton* court explained that to satisfy the favorable termination element there must be:

> "[A] judicial determination which deals with the factual issues. Voluntary dismissal, *settlement*, or even involuntary dismissal are not such terminations." (Emphasis added.) *Sutton*, 118 Ill. App. 3d at 68, citing *Kurek*, 50 Ill. App. 3d at 1038.

■ Here, the parties settled the underlying dispute and the proceeding was dismissed with prejudice. Nothing in the allegations of the Chuis' counterclaims or the proof that was presented at trial supports a finding that this was a termination in favor of the Chuis. A termination of the proceeding in favor of the Chuis cannot be inferred from the parties' stipulated dismissal of the Aroras' complaint. The fact that the parties agreed to allow the Chuis to proceed with their counterclaims is of no consequence considering that the Aroras had two appellate court opinions directly on point and a host of authority generally supporting their position to assure them that

the Chuis could not prove their counterclaims absent a judicial determination in the underlying suit or at the very least a termination of that suit dealing with factual issues. See *Sutton*, 118 Ill. App. 3d at 68; *Kurek*, 50 Ill. App. 3d at 1038; see also *Smith*, 112 Ill. App. 3d at 657; *Rumer v. Zeigler Coal Co.*, 168 Ill. App. 3d 568, 573-74 (1988) (a physician must prove that there was a factual termination of the underlying medical malpractice suit in his favor to proceed with his suit for malicious prosecution); *Savage v. Seed*, 81 Ill. App. 3d 744, 750 (1980) (holding that a voluntary dismissal which does not adjudicate the merits of the claim involved is not a favorable "judicial termination" which can support a subsequent claim for malicious prosecution). Under the circumstances here, we find that the Chuis failed to establish a *prima facie* case for malicious prosecution due to their failure to prove that the underlying suit was terminated in their favor. Furthermore, this case does not require a remand to allow the Chuis to prove their claim since they have already presented their case in chief and the burden of proof in a malicious prosecution action involving the settlement of an underlying civil suit is well established.

The dissent misinterprets the settlement agreement as somehow being a concession that the Aroras would not rely on the favorable termination requirement to seek a dismissal of the malicious prosecution claim. From this mistaken premise, the dissent concludes that the parties' settlement "passed muster" as a "favorable termination." The dissent reads too much into the parties' agreement. The agreement merely provided that the Aroras' complaint was dismissed with prejudice and the Chuis' counterclaims were not dismissed. Thus, it is clear that the settlement did not deal with any factual issues, nor did it purport to be an admission by the Aroras that their claim lacked factual merit or similarly that the Chuis' counterclaims had merit. There is simply nothing in the agreement suggesting that the Aroras' claim lacked probable cause. Had the agreement contained such an admission this would be a different case. Here, however, the agreement does not contain such an admission, and the Aroras never agreed to abandon their right to later seek a dismissal of the Chuis' claims for failure to state a cause of action. Under the circumstances, we see no problem in requiring a termination of the underlying proceeding which deals with factual issues.

The dissent maintains that our ruling encourages unethical behavior and obliterates the tort of malicious prosecution. Nothing could be further from the truth. Our holding merely follows the well-settled law on malicious prosecution, and neither expands nor limits that tort as it has heretofore existed in Illinois. Additionally, we note

that the sanctions available under Supreme Court Rule 137 (134 Ill. 2d R. 137) protect parties from false pleadings and meritless claims. Here, the Chuis did not file a motion pursuant to Rule 137 in the underlying proceeding. Thus, it is unnecessary for us to decide whether such a motion filed in the underlying proceeding and successfully litigated by the Chuis in that proceeding would be grounds for a finding that the underlying proceeding terminated in the Chuis' favor.

The dissent's view would open the floodgate for malicious prosecution claims and would discourage settlements. Any time a party found after discovery that it did not have as good a claim as anticipated and then decided to either settle, nonsuit, or forego prosecution resulting in a dismissal for want of prosecution, the plaintiff would be subject to a subsequent malicious prosecution claim if it could be shown that the plaintiff could not have proved his claim in the underlying suit. This is not the law in Illinois nor should it be. To support its departure from precedent, the dissent claims that the supreme court has never required a judicial determination. However, it would be more accurate to state that the supreme court has never been faced with the issue of whether a judicial determination is required. With the limited exception of the *nolle prosequi* of an underlying criminal action, the supreme court has never held that a complainant can maintain a malicious prosecution claim absent a termination of the underlying proceeding on the merits.

Additionally, we note that, even if the numerous cases requiring a judicial determination are incorrect, the outcome would nonetheless be the same in the present case. As the dissent recognizes, settlements do not generally amount to a finding of favorable termination. As previously stated, neither the settlement itself nor the record from the original proceeding indicates that the prior suit was terminated in the Chuis' favor.

■ ■ Turning now to the Chuis' abuse of process claim, we again find that they failed to establish a *prima facie* case so as to avoid a directed finding. The two elements which are necessary to prove a claim for abuse of process are: (1) the existence of an ulterior purpose or motive, and (2) some act in the use of the legal process not proper in the regular prosecution of such proceedings. *Bonney*, 201 Ill. at 51; *Landau v. Schneider*, 154 Ill. App. 3d 875, 878 (1987).

In the two Illinois cases to consider the meaning of the word "process," the courts have defined it as any means used *by the court* to acquire or exercise jurisdiction over a person or over specific property. *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 816 (1983); *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 968 (1972). Those cases further

explain that "[p]rocess is issued by the court, under its official seal." *Doyle*, 120 Ill. App. 3d at 816; *Scott*, 4 Ill. App. 3d at 968. This is consistent with the Black's Law Dictionary definition of "legal process" as a "summons, writ, warrant, mandate, or other process issuing from *a court*." (Emphasis added.) Black's Law Dictionary 1205 (6th ed. 1990). Moreover, no Illinois case has ever held that one can maintain an abuse of process claim that does not involve the misuse of the process of the court. The filing of a *lis pendens* notice, which is the asserted abuse of process in this case, did not involve the misuse of the process of the court. Accordingly, we find that the Chuis failed to establish a *prima facie* case.

For the foregoing reasons, we find that the Chuis failed to establish a *prima facie* case for either malicious prosecution or abuse of process. In the interest of judicial economy, we affirm the trial court's dismissal of the Chuis' counterclaims.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DOYLE, J., concurs.

PRESIDING JUSTICE McLAREN, dissenting:

## MALICIOUS PROSECUTION

The law of Illinois, *inter alia*, is that there must be a "favorable termination" in order to plead properly a cause of action recognized in this State as malicious prosection.

I submit that a reasoned review of Illinois case law establishes that a "favorable termination" can typically occur in two situations: first, a trial or hearing "on the merits" which is terminated in the plaintiff's favor; second, a termination of the proceedings, not "on the merits," but with sufficient facts alleged to indicate that, if there were a trial or hearing on the merits, judgment would be rendered in the plaintiff's favor.

The line of cases referenced by the majority essentially determines that the plaintiffs failed to plead properly a cause of action for malicious prosecution because they failed to allege sufficient facts to meet *either* situation above. The majority makes a quantum leap and determines that those cases stand for the proposition that no plaintiff can ever allege a set of facts setting forth a cause of action for malicious prosecution unless the plaintiff alleges facts to establish the first situation set forth above *and only the first situation*!

Initially, I note that the requirement of a "judicial *determina-

tion" of favorable termination in the underlying suit (see *Rumer v. Zeigler Coal Co.*, 168 Ill. App. 3d 568, 573-74 (1988); *Sutton v. Hofeld*, 118 Ill. App. 3d 65, 68 (1983); *Kurek v. Kavanagh, Scully, Sudow, White & Frederick*, 50 Ill. App. 3d 1033, 1038 (1977)) is a radical concept with no support from the supreme court. *Kurek*, the first case to require a "judicial determination," announced the requirement in *obiter dicta* and cited no authority for this concept. *Kurek*, 50 Ill. App. 3d at 1038. *Kurek* erroneously cites *Bonney v. King*, 201 Ill. 47 (1903), for the proposition that a voluntary dismissal does not constitute a favorable termination. In *Bonney*, our supreme court addressed a scenario where the plaintiff *failed to allege that the underlying suit had been terminated in any manner*. *Bonney*, 201 Ill. at 49-50. *Bonney* never reached the issue of what constitutes a favorable termination. Nevertheless, sundry cases have cited to *Kurek* without questioning *Kurek*'s authority or its use of *dicta* to introduce a new pleading requirement for malicious prosecution claims. See *Rumer*, 168 Ill. App. 3d at 573-74; *Sutton*, 118 Ill. App. 3d at 68; *Smith*, 112 Ill. App. 3d at 657; *Savage*, 81 Ill. App. 3d at 749. All of these cases are factually distinguishable from this case. None of the cases which follow *Kurek* contain stipulations by the parties which allow the original defendants to proceed with their claims for malicious prosecution. It is not clear from the records and pleadings in those cases that the settlements are favorable to any party, let alone to the plaintiffs.

The majority states that the specific agreement between the parties to allow the claim to continue "is of no consequence" in light of the decisions cited by the majority. I believe the cases cited by the majority are factually inapposite and based upon a faulty application of *obiter dicta* contained in *Kurek*. I believe the Chuis had the right to rely on supreme court decisions which make no mention of a "judicial determination" and which assured them that their agreement with the Aroras would be considered "of major consequence" (see *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455 (1990); *Bonney*, 201 Ill. 47).

The majority fails to cite or reconcile *March v. Cacioppo*, 37 Ill. App. 2d 235 (1962). There, a malicious prosecution claim was allowed to proceed, although there had *not* been a judicial determination, let alone a judicial termination. A confession of judgment was vacated, and the defendants were allowed to appear and defend. The vacation, coupled with facts to show the lack of merit of the original confession, was deemed a favorable termination.

I recognize that compromise and settlement agreements generally do not amount to a finding of favorable termination. See W. Keeton, Prosser & Keeton on Torts § 120 (5th ed. 1984 & Supp. 1988) (and cases cited therein). This is because:

"[E]ither the settlement is an admission of probable cause for the initiation of the prosecution [in a criminal case], or because it would be unfair to allow a person to consent to a termination and *then take advantage of it.*" (Emphasis added.) *Young v. First State Bank,* 628 P.2d 707, 710 (Okla. 1981).

See also 52 Am. Jur. 2d *Malicious Prosecution* § 44 (1970); 3 J. Lee & B. Lindahl, Modern Tort Law § 40.10, at 455 (rev. ed. 1990).

However, the facts of this case are unusual in that the settlement agreement explicitly allows the Chuis to prosecute the malicious prosecution claim. I submit it is *not* unfair to allow the Chuis to receive the benefit of their bargain. They are *not* taking advantage of the termination of the original proceedings; the agreement explicitly allows them to prosecute the claim. Therefore, the Aroras have no basis to claim surprise or unfair advantage under the circumstances. Ironically, the majority allows the Aroras, not the Chuis, to "*consent to a termination and then take advantage of it.*" The majority permits the Aroras to observe the part of the settlement agreement which terminates the litigation and then to disregard and disavow the burdensome remainder which allows the Chuis to proceed with their malicious prosecution claim. Ironically, in responding to this dissent, the majority suggests that, if the agreement contained an admission that the suit "lacked probable cause," then this would have constituted a *proper non*judicial termination. I submit that the majority has failed to consider *all* the circumstances as required by *Swick v. Liautaud,* 169 Ill. 2d 504 (1996). I submit the majority has improperly resolved an apparent ambiguity in the agreement by precluding the Chuis the opportunity to present relevant evidence as to the intent of the parties.

I submit no abuse of the judicial system or reluctance of future parties to bring an action to court would result if this court determined that a settlement like the present passed muster as a "favorable termination," if properly pleaded and proved. I submit this would *not* "open the floodgate" as suggested by the majority. The plaintiff would still have to prove the other elements of a malicious prosecution in order to prevail. The majority fails to cite any authority or provide any sound logic to support its determination that to enforce a settlement agreement as it is written would somehow discourage settlements. I believe the exact opposite is true; the majority's approach discourages settlements because, under the majority's approach, parties are no longer bound by the terms of their settlement agreements. Consequently, opposing parties are better off *not* settling.

I do not believe that the majority's opinion is reconcilable with

our supreme court's decision in *Swick*, 169 Ill. 2d 504, which requires the court to examine the circumstances of the "nonjudicial termination." *Swick*, 169 Ill. 2d at 512-13. The majority is incorrect in declaring that the sanctions available under Supreme Court Rule 137 (134 Ill. 2d R. 137) adequately protect parties from malicious prosecutions. Malicious prosecution claims provide for damages. *Swick*, 169 Ill. 2d at 512-13. Rule 137 does not! The Chuis' complaint alleged over $250,000 in special damages excluding attorney fees. The majority fails to cite to any authority that suggests or implies that a $250,000 loss is inconsequential.

The majority ineffectively attempts to distinguish *Swick* and claims that the present case is more like *Joiner v. Benton Community Bank*, 82 Ill. 2d 40 (1980). *Joiner* is factually distinguishable from the case at bar. In *Joiner*, the original defendant made full restitution to the bank, the original plaintiff, in exchange for the dropping of the criminal charges against the defendant. After the bank agreed and settled the original cause, the original defendant brought a malicious prosecution action against the bank. Obviously, this was unfair to the bank as it received the funds it claimed, essentially prevailing on its claim. In this case, the Aroras received nothing in the settlement of the underlying case, notwithstanding the grant of immunity declared by the majority, despite a stipulation by the parties to the contrary.

This case is also distinguishable from our supreme court's decision in *Schwartz v. Schwartz*, 366 Ill. 247 (1937), which the majority incorrectly cites for the proposition that settlements, as a whole, may not constitute favorable terminations for the purpose of a subsequent malicious prosecution action. In *Schwartz*, our supreme court never made such a sweeping statement! In *Schwartz*, the original suit was dismissed "upon acceptance of a tender," and the supreme court held that the original defendant's payment was "evidence of probable cause for the suit." *Schwartz*, 366 Ill. at 252. The payment of funds to the original plaintiff meant that in that particular case the original defendant could not factually plead that the plaintiff had not prevailed.

The majority opinion improperly expands the erroneous "judicial determination" doctrine. In *Kurek*, 50 Ill. App. 3d at 1038, and its progeny, the appellate court required a "judicial *determination*" of a "favorable termination." The majority transmutes a "judicial *determination*" into a "judicial termination." Thus, through *dicta* and superficial analysis, the majority has transformed what our supreme court has termed a "favorable termination" into a "judicial termination" *on the merits*.

Analogically, the majority's new doctrine has given the prisoner the keys to the entire prison system. A disingenuous plaintiff who maliciously prosecutes an action with the specific intent to damage the defendant may do so with impunity until it is evident that the proceedings have reached the point where the trial court will enter judgment on the merits. The disingenuous plaintiff can then terminate the suit through sundry procedures (nonsuit, or dismissal with or without prejudice, see 735 ILCS 5/2—1009 (West 1994)) and never face the just consequences of his actions because the dismissal of the underlying action was not a "judicial termination." The majority's opinion allows and encourages such unethical and injurious behavior and goes far beyond merely not favoring malicious prosecution (see *Schwartz*, 366 Ill. at 250); it effectively obliterates the tort.

Additionally, I would reverse for another reason. The majority erroneously likens this case to *Swager v. Couri*, 77 Ill. 2d 173 (1979), which dealt with a judgment *n.o.v.* In *Swager*, our supreme court agreed that, "not only was there a complete failure to plead [a required element], but also a complete lack of proof on this issue *at trial*, which therefore should have resulted in a judgment *n.o.v.* in their favor." (Emphasis added.) *Swager*, 77 Ill. 2d at 187. The present case deals with the grant of a motion *on the pleadings*, granted after the Chuis had rested their case at trial, not with a judgment *n.o.v.* Here, *no* verdict or findings of fact were ever made! The Chuis never had the opportunity to amend their pleadings, let alone present proofs considered by the court. I disagree with the majority's application of *Swager*, wherein it was stated "all of the evidence, viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favor[ed] the defendants on this question that no contrary verdict *** could ever stand," to the present case. *Swager*, 77 Ill. 2d at 187. In the present case, the trial court heard proofs which support *all* the elements of the claimed malicious prosecution and then declared that it would not consider the proofs. On appeal, the majority assumes the mantle of the "trier of fact" and renders a "verdict" in the nature of a judgment *n.o.v.*, without ever considering the merits of the proofs presented.

The majority has: disregarded the fact that the Aroras waived the claim that the Chuis failed to plead properly a cause of action; dismissed the stipulation to allow the claim to proceed entered into by the parties; disregarded the meritorious proofs showing that the Aroras caused the Chuis $250,000 in special damages by causing a delay in the sale of the Chuis' home through the malicious prosecution of the Aroras' lame claim; failed to *adequately* distinguish *Swick*,

169 Ill. 2d 504; and disregarded the difference between a judgment *on the pleadings* and a judgment *n.o.v.*

In conclusion, I suggest the following to ameliorate the drastic effect of the majority's decision, despite the fact that what I suggest does not comport with a "judicial termination." A defendant in the original proceeding might consider filing a Supreme Court Rule 137 motion. If it were successful, at least as to frivolity, it may bolster the factual allegations necessary to allege a favorable termination.

## ABUSE OF PROCESS

Finally, I would also reverse and remand on the abuse of process claim. Prosser and Keaton on Torts lists *lis pendens* as a "process" which lends itself to a claim for abuse of process. W. Keeton, Prosser & Keeton on Torts § 121 (5th ed. 1984 & Supp. 1988). Further, while discussing different elements of abuse of process in other cases, not only has our supreme court never set forth actual seizure or arrest as a requirement in an abuse of process claim, but it also held that, with a malicious prosecution claim, actual seizure of property was not required and "interference with one's property" would suffice. *Bank of Lyons v. Schultz*, 78 Ill. 2d 235, 241 (1980). I submit this tenet may and ought to be applied to claims for abuse of process. In this case, it was alleged and admitted that the filing of the *lis pendens* notice prevented the Chuis from selling the property. Thus the notice, though constructive, effectuated a seizure. Consequently, I believe the Chuis properly pleaded a cause for abuse of process.